UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GORDON ALEXANDER CLARK, *Plaintiff-Appellant* <br><br> v. <br><br> SANTANDER BANK, N.A., SCOTT POWELL, TIMOTHY WENNES, PIERRE HABIS, KENNETH O'NEILL, AND JOHN/JANE DOE(S), *Defendants-Appellees.* | No. 3:24-cv-55 (VAB) |

**RULING AND ORDER ON MOTION TO DISMISS BANKRUPTCY APPEAL**

Gordon Alexander Clark ("Plaintiff-Appellant" or "Plaintiff") brings this appeal, *pro se*, from the United States Bankruptcy Court for the District of Connecticut ("Bankruptcy Court") (Tancredi, J.) dismissing his adversary complaint against Santander Bank, N.A. ("Santander"), Scott Powell, Timothy Wennes, Pierre Habis, Kenneth O'Neill, and John/Jane Doe(s) (collectively, "Defendants-Appellees" or "Defendants"), and denying his request for certification of direct appeal to the Second Circuit and his motion for recusal.

Mr. Clark initiated the adversary proceeding on August 15, 2023 in the Chapter Thirteen bankruptcy case that he had commenced in Bankruptcy Court, and brought thirteen claims in his individual capacity and in his capacity as "husband, sole fiduciary, sole beneficiary, and sole creditor of the estate of Lillian J. Clark": (1) injunctive relief under 15 U.S.C. § 1116 ("Count One"); (2) failure to validate debt under 15 U.S.C. § 1692g ("Count Two"); (3) dischargeability of debt under 11 U.S.C. § 727 ("Count Three"); (4) theft of real property under 18 U.S.C. § 1005 ("Count Four"); (5) negligence ("Count Five"); (6) abuse of process ("Count Six"); (7) financial fraud under 18 U.S.C. § 1005 ("Count Seven"); (8) mortgage fraud under 18 U.S.C. § 1005 ("Count Eight"); (9) mail fraud under 18 U.S.C. § 1341 ("Count Nine"); (10) violation of the

Fair Debt Collection Practices Act under 15 U.S.C. § 1692 ("Count Ten"); (11) conspiracy to commit financial fraud under 18 U.S.C. 1005 ("Count Eleven"); (12) conspiracy to interfere with civil rights under 42 U.S.C. § 1985 ("Count Twelve"); and (13) violations of the Connecticut Unfair Trade Practices Act ("Count Thirteen"). *See* Complaint, *Clark v. Santander Bank, N.A. et al*, Adversary Proceeding No. 23-2013, ECF No. 1 (Bankr. D. Conn. Aug. 18, 2023) ("Compl.").

On January 11, 2024, the Bankruptcy Court granted Defendants' motion to dismiss Mr. Clark's adversary proceeding. On January 29, 2024, the Bankruptcy Court denied his request for certification, and on February 2, 2024, the Bankruptcy Court denied his motion for recusal. This appeal followed, with a Notice of Appeal entered on this Court's docket on January 16, 2024. ECF No. 1.

For the reasons below, the Bankruptcy Court's decision is **AFFIRMED**. The Bankruptcy Court properly dismissed Mr. Clark's adversary proceeding and denied leave for certification and his motion for recusal.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

Because this case has a lengthy history, the Court has only included the factual and procedural history most pertinent to this appeal.

A.  **State Foreclosure Proceedings**

On November 22, 2019, Santander initiated foreclosure proceedings on 70 Elm Street, Enfield, Connecticut for a mortgage executed by Mr. Clark's late wife, Lillian J. Clark. *Santander Bank, N.A. v. Clark*, Judicial District of Hartford, No. HHD-CV-19-6120472-S, Complaint (Conn. Super. Ct. Nov. 22, 2019). Mr. Clark's wife allegedly bequeathed the home to him before her death on October 18, 2020. Appellant's Brief, ECF No. 20 at 18–19 (Mar. 8, 2024) ("Appellant's Brief").

2

Before the foreclosure proceeding was completed, Mr. Clark filed suit in federal court, *Clark v. Santander Bank, N.A.*, No. 22-cv-00039-SVN (Jan. 10, 2022), ECF No. 1, but his case was dismissed after the Court determined that Mr. Clark could not represent the estate of Mrs. Clark *pro se*. *Id.*, ECF No. 133.[1]

On May 19, 2023, the Superior Court, rejecting Mr. Clark's defenses and counterclaims, entered judgment for Santander. *Santander Bank, N.A. v. Clark*, Judicial District of Hartford, No. HHD-CV-19-6120472-S (Conn. Super. Ct. Nov. 22, 2019), ECF No. 292 ("State Foreclosure Action").

Mr. Clark's subsequent appeals, *Santander Bank, N.A. v. Clark*, No. AC 45927 (Conn. App. Ct. Jan. 5, 2023) and *Santander Bank, N.A. v. Clark*, No. AC 46473 (Conn. App. Ct. July 19, 2023), were denied, and his petition for certification to the Connecticut Supreme Court likewise was denied. *Santander Bank, N.A. v. Clark*, No. SC 230179 (Conn. Feb. 20, 2024).

## B. Bankruptcy Court Proceedings

On August 18, 2023, Mr. Clark filed this Complaint against Defendants in Bankruptcy Court, and alleged that the Defendants were "attempting to steal [his] beloved wife's (Lillian Clark's/Mrs. Clark's) home of 65 years, through financial fraud and abuse of process." *See* Compl. at 3.

On September 15, 2023, Santander Bank filed a motion to dismiss. *Clark v. Santander Bank, N.A. et al*, Adversary Proceeding No. 23-2013), ECF No. 9 (Bankr. D. Conn. Sept. 15, 2023).

---

[1] On November 20, 2023, Mr. Clark filed another Complaint in federal district court. *Clark v. Conn. et. al.*, No. 23-cv-01527-SVN, ECF No. 1 (Nov. 20, 2023), that the court dismissed for lack of subject matter jurisdiction, personal jurisdiction, and failure to state a claim. *Id.*, ECF No. 99 (Nov. 30, 2024).

On September 18, 2023, Timothy Wennes, Pierre Habis, Kenneth O'Neill and John Doe likewise filed a motion to dismiss. *Id.*, ECF No. 19.

On October 13, 2023, Mr. Clark filed an opposition to the motions to dismiss. *Id.*, ECF No. 25.

On October 27, 2023, Defendants filed a reply. *Id.*, ECF No. 26.

On December 20, 2023, Mr. Clark filed a motion for summary judgment. *Id.*, ECF No. 30.

On December 21, 2023, Judge James J. Tancredi held a hearing on the motion to dismiss. *See id.*, ECF Nos. 31, 32.

On January 11, 2024, Judge Tancredi issued a Memorandum of Decision dismissing Mr. Clark's adversary proceeding for several reasons. Memorandum of Decision, *id.*, ECF No. 35 ("Order re Mot. to Dismiss"). First, the Bankruptcy Court found that Mr. Clark may not bring claims on behalf of his wife's estate *pro se*, although he does have standing to bring suit in his individual capacity. Order re Mot. to Dismiss at 10. Second, Bankruptcy Court dismissed Mr. Clark's claims brought under federal criminal statutes for which there is no private cause of action. *Id.* at 12. Third, the Bankruptcy Court dismissed Mr. Clark's claims that were identical to claims brought during the State Foreclosure Action under the doctrine of res judicata and collateral estoppel. *Id.* at 13–14. Finally, the Bankruptcy Court dismissed the remainder of Mr. Clark's claims for failure to state a claim. *Id.* at 15–16. The Court denied leave to amend, as Mr. Clark's "pattern has [] been to attempt to relitigate his claims in another lawsuit in other forums when it is apparent that they will not pass muster in their current setting." *Id.* at 18.

On January 12, 2024, Mr. Clark filed a motion to recuse Judge Tancredi and a request for certification of direct appeal to the Second Circuit. *See* Mot. to Recuse, *Clark v. Santander Bank,*

*N.A. et al*, Adversary Proceeding No. 23-2013, ECF No. 37 (Bankr. D. Conn. Jan. 12, 2024) ("Mot. for Recusal"); Notice of Appeal, *id.*, ECF No. 38.

On January 24 and January 26, 2024, Defendants filed their objections to Mr. Clark's request for certification. *Id.*, ECF Nos. 46 and 47.

On January 29, 2024, the Bankruptcy Court denied Mr. Clark's request for certification. *Id.*, ECF No. 48 ("Order re Appeal").

On February 1, 2024, the Bankruptcy Court held a hearing on Mr. Clark's motion for recusal. *See id.*, ECF No. 50.

On February 2, 2024, the Bankruptcy Court denied Mr. Clark's motion for recusal, and found "[a]ll of Mr. Clark's complaints are with this Court's rulings and remarks on evidence in the record, none of which are rooted in favoritism or antagonism but are firmly rooted in the law, the facts, and affording deliberate consideration of the appropriate remedies." *Id.*, ECF No. 51 at 5 ("Order re Recusal").

### C. District Court Appeal

While Mr. Clark originally filed an appeal of the Bankruptcy Court's Order dismissing his adversary complaint on January 16, 2024, on February 5, 2024, he submitted an amended appeal of all three of the Bankruptcy Court's decisions. *See* ECF Nos. 1, 13.

On March 8, 2024, Mr. Clark submitted his brief. Appellant's Brief.

On April 4, 2024, Defendant Scott Powell submitted his brief. Appellee's Brief, ECF No. 21 (Apr. 4, 2024) ("Powell Brief").

On April 4, 2024, the remaining Defendants submitted their brief. Appellee's Brief, ECF No. 21 (Apr. 4, 2024) ("Santander Brief").

## II.    STANDARD OF REVIEW

A district court has jurisdiction to review final judgments, orders, and decrees made by the bankruptcy courts. 28 U.S.C. § 158(a)(1). "[I]n bankruptcy appeals, the district court reviews the bankruptcy court's factual findings for clear error and its conclusions of law de novo." *In re Charter Commc'ns*, 691 F.3d 476, 482–83 (2d Cir. 2012); *see also Papadopoulos v. Gazes*, No. 14-CIV-3713 (KPF), 2014 WL 3928940, at *4 (S.D.N.Y. Aug. 12, 2014) ("In general, a district court reviews a Bankruptcy Court's findings of fact for clear error and its conclusions of law de novo." (internal quotation marks omitted)). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re Guadalupe*, 365 B.R. 17, 19 (Bankr. D. Conn. 2007) (internal quotation marks omitted).

A court must liberally construe any *pro se* filing to raise the "strongest arguments it suggests." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006); *see also Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013); *Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994) (explaining that *pro se* litigants should be afforded "special solicitude" because they are not represented by counsel). However, "a *pro se* plaintiff is not exempt from complying with court orders and must diligently prosecute his case." *Mena v. City of New York*, No. 15-CV-3707, 2017 WL 6398728, at *2 (S.D.N.Y. Dec. 14, 2017). *Pro se* litigants also are "required to learn and comply with procedural rules." *In re Truong*, 388 B.R. 43, 45 (Bankr. S.D.N.Y. 2008), *aff'd*, 327 F. App'x 260 (2d Cir. 2009); *see also Edwards v. INS*, 59 F.3d 5, 8 (2d Cir. 1995) ("[W]hile a *pro se* litigant's pleadings must be construed liberally, . . . *pro se* litigants generally are required to inform themselves regarding procedural rules and to comply with them." (citations omitted)).

### A.  Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under [Federal] Rule [of Civil Procedure] 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)). The plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject matter jurisdiction over the claims. *See id.*

"When considering a motion to dismiss [under] Rule 12(b)(1), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000); *see also Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006). The court, however, may also resolve disputed jurisdictional issues "by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing." *Karlen ex rel. J.K. v. Westport Bd. of Educ.*, 638 F. Supp. 2d 293, 298 (D. Conn. 2009) (citing *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000)).

"When the Rule 12(b)(1) motion is facial, i.e., based solely on the allegations of the complaint . . . , the plaintiff has no evidentiary burden." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). "[A] defendant is [also] permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the [p]leading." *Id.* "In opposition to such a motion, the plaintiffs will need to come forward with evidence of their own to controvert that presented by the defendant 'if the affidavits submitted on a 12(b)(1) motion . . . reveal the existence of factual problems' in the assertion of jurisdiction." *Id.* (quoting *Exch. Nat'l Bank of Chi. v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976)).

### B.  Rule 12(b)(6)

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "[t]wo working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (alteration in original) (citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the Court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The Court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of N.Y.C.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs.*, Inc., 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

## III.   DISCUSSION

Mr. Clark appeals the Bankruptcy Court's dismissal of his adversary complaint, denial of certification of direct appeal to the Second Circuit, and denial of his motion for recusal. Defendants argue that the Bankruptcy Court's decision on all three matters should be affirmed.

The Court will address each issue in turn.

### A.  The Motion to Dismiss An Adversary Proceeding

Defendants argue that the Bankruptcy Court properly dismissed Mr. Clark's adversary complaint because (1) Counts Four, Seven, Eight, Nine, and Eleven do not provide private causes of action, (2) res judicata and collateral estoppel bar most of Mr. Clark's claims, and (3) Counts One, Three, and Twelve fail to state a claim upon which relief can be granted.

The Court will address each basis for dismissal.

### 1.  Claims Brought in a Representative Capacity

While not addressed in the parties' briefs, the Court briefly notes that the Bankruptcy Court correctly held that Mr. Clark may not bring this action in his capacity as "husband, sole

fiduciary, sole beneficiary, and sole creditor of the estate of Lillian J. Clark," though he may bring this action in his individual capacity.

*Pro se* plaintiffs cannot represent an estate when they are not the sole beneficiary or creditor of that estate, and Mr. Clark is not currently the sole creditor of the estate of Lillian J. Clark, as evidenced by this very lawsuit against creditors of the estate of Lillian J. Clark. *See Pridgen v. Andresen*, 113 F.3d 391, 393 (2d Cir. 1997) ("We now hold that an administratrix or executrix of an estate may not proceed pro se when the estate has beneficiaries or creditors other than the litigant."); *see also DePonceau v. Pataki*, 315 F. Supp. 2d 338, 341 (W.D.N.Y. 2004) ("A *pro se* plaintiff may not seek to represent the interests of third-parties." (citing *Iannaccone v. Law,* 142 F.3d 553, 558 (2d Cir.1998))); *Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010) ("A person who has not been admitted to the practice of law may not represent anybody other than himself." (citing *Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007))). As a result, Mr. Clark does not have standing to bring suit as a representative of the estate of Lillian J. Clark.

Mr. Clark does have standing, however, in his individual capacity, based on his status as a defendant in the foreclosure action, and because of a purported lien on the property at issue.[2] The presence of his lien on the land records of the property, and Mr. Clark's claim related to it, are enough to establish standing because Mr. Clark can display a personal stake in the outcome

---

[2] The Bankruptcy Court made the following factual findings regarding the purported lien, and the Court does not find clear error in the Bankruptcy Court's findings, *see In re Charter Commc'ns*, 691 F.3d at 483 ("[T]he district court reviews the bankruptcy court's factual findings for clear error[.]"):

> At the December 21, 2023 hearing, the Debtor indicated that that lien was effectively a gift from his spouse, as opposed to a duly executed mortgage or judgment lien. In the Superior Court's memorandum of decision, it ruled that the Debtor failed to meet his burden of proof as to his special defense that he had a valid, secured, and enforceable first lien position but made no additional findings that would indicate that the lien was totally invalidated. Despite what appears to be dubious evidence that the Debtor has a lien on the property, its presence on the land records and his claim related thereto are enough for him to have standing in his individual capacity here.

Order re Mot. to Dismiss at 10–11.

of the controversy. *See In re Residential Capital, LLC*, 537 B.R. 161, 170 (Bankr. S.D.N.Y. 2015) ("The standing doctrine 'requires federal courts to satisfy themselves that the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction.'" (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)))

### 2. The Criminal Causes of Action

Courts in this Circuit have consistently held that "federal criminal statutes do not provide private causes of action." *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order); *see id.* ("To the extent that Appellants assert claims based on the violation of federal criminal statutes … these claims are not cognizable, as federal criminal statutes do not provide private causes of action."); *Xu v. Neubauer*, 166 F. Supp. 3d 203, 207 (D. Conn. 2015) ("Federal criminal statutes do not provide private rights of action . . . [B]ecause none of the criminal statutes cited by the plaintiff provide private rights of action, these claims are being dismissed for failure to state a claim upon which relief can be granted.") (collecting cases); *Klaneski v. State Farm Mut. Auto. Ins. Co.*, 680 F. Supp. 3d 170, 180 (D. Conn. 2023) ("[T]he Second Circuit has held that the 'federal criminal mail and wire fraud statutes,' the precise statutes at issue in this case, do not create a private right of action." (citing *Nath v. Select Portfolio Servicing, Inc.*, 732 F. App'x 85, 87 (2d Cir. 2018) (summary order))); *Valentin Christian v. Town of Riga*, 649 F. Supp. 2d 84, 90 (W.D.N.Y. 2009) ("Generally, violations of the Criminal Code may not serve as the basis for a civil cause of action unless the statute includes an express or implied private right of action.").

Mr. Clark asserts claims of theft of real property under 18 U.S.C. § 1005 in Count Four; financial fraud under 18 U.S.C. § 1005 in Count Seven; mortgage fraud under 18 U.S.C. § 1005

in Count Eight; mail fraud under 18 U.S.C. § 1341 in Count Nine; and conspiracy to commit fraud under 18 U.S.C. § 1005 in Count Eleven. Each claim arises from a criminal statute.

Because mail fraud under 18 U.S.C. § 1341 is a criminal statute that does not create a private cause of action, Count Nine must be dismissed. *Klaneski*, 680 F. Supp. 3d at 180 (dismissing claims brought under 18 U.S.C. §§ 1341 and 1343 and noting "the Second Circuit has held that the 'federal criminal mail and wire fraud statutes,' the precise statutes at issue in this case, do not create a private right of action. (citing *Nath*, 732 F. App'x at 87)); *Valentin Christian*, 649 F. Supp. 2d at 90 (dismissing plaintiff's claims stemming from criminal statutes, including 18 U.S.C. § 1341, because "none of the provisions plaintiff cites includes an express private right of action, nor may such a right be implied from the language of the statutes.").

Likewise, Mr. Clark's other claims, which arise out of 18 U.S.C. § 1005, a federal criminal statute that imposes penalties on anyone who makes a false statement with intent to deceive a bank examiner, also must be dismissed because "18 U.S.C. § 1005 does not provide a private right of action." *Davis v. Countrywide Home Loans*, No. 09 CIV. 8606 RJS HBP, 2010 WL 3219306, at *9 (S.D.N.Y. July 23, 2010)). As a result, Counts Four, Seven, Eight, and Eleven must also be dismissed.[3]

---

[3] The Court is mindful that, as a *pro se* plaintiff, Mr. Clark is entitled to a liberal reading of his pleadings. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Although Mr. Clark's claim asserts 18 U.S.C. § 1005 as its cause of action, this Court recognizes that in *Segarra v. FRB of N.Y.*, 17 F. Supp. 3d 304 (S.D.N.Y. 2014), the Southern District of New York acknowledged that "Congress did create a private right of action against 'the directors or officers of any member bank' who 'knowingly violate' 18 U.S.C. § 1005. (citing 12 U.S.C. § 503)." *Id.* at 310. Under 12 U.S.C. § 503, officers or agents of any bank who "knowingly violate the provisions of …. section 1005 of Title 18, United States Code shall be held liable in his personal and individual capacity … for damages …. sustained in consequence of such violation." While Mr. Clark has named current and former directors and officers of Santander as Defendants, Mr. Clark has not pled facts that give rise to a claim under § 503, nor does he include any allegations that relate to the individual actions or intentions of the individual Defendants. *See Twombly*, 550 U.S. at 555–56, 570 (plaintiff must plead "enough facts to state a claim to relief that is plausible on its face"); *see also* Powell Brief at 13 ("The thrust of Clark's fraud claims appears to be that his mortgage debt was not validated, he allegedly received 'false' monthly statements, and foreclosure was pursued. Clark does not explain how Powell [the former CEO of Santander] has anything to do with those claims."). Therefore, even reading Mr. Clark's pleadings under the liberal standard afforded to *pro se* plaintiffs, his claim must be dismissed.

Accordingly, because Counts Four, Seven, Eight, Nine, and Eleven each arise out of a federal criminal statute, and federal criminal statutes do not give rise to private causes of action, the Bankruptcy Court properly dismissed these claims. *See Xu*, 166 F. Supp. 3d at 207 ("Because none of the criminal statutes cited by the plaintiff provide private rights of action, these claims are being dismissed for failure to state a claim upon which relief can be granted.").

### 3.  Claim Preclusion

"Under the doctrine of *res judicata*,[4] or claim preclusion, '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *EDP Med. Comput. Sys. v. United States*, 480 F.3d 621, 624 (2d Cir. 2007) (quoting *St. Pierre v. Dyer*, 208 F.3d 394, 399 (2d Cir. 2000)). In *Corbett v. MacDonald Moving Servs.*, 124 F.3d 82 (2d Cir. 1997), the Second Circuit recognized a four-step test to determine whether the doctrine of res judicata applies: "whether 1) the prior decision was a final judgment on the merits, 2) the litigants were the same parties, 3) the prior court was of competent jurisdiction, and 4) the causes of action were the same. *Id*. at 87–88 (citing *In re Teltronics Servs., Inc.*, 762 F.2d 185, 190 (2d Cir. 1985)).

Mr. Clark asserts in Count Two, failure to validate debt under 15 U.S.C. § 1692g; in Count Five, negligence; in Count Six, abuse of process; in Count Ten, violation of the Fair Debt Collection Practices Act under 42 U.S.C. § 1985; and in Count Thirteen, violations of the Connecticut Unfair Trade Practices Act. As discussed above, Counts Four, Seven, Eight, and Eleven assert claims for theft of real property, mortgage fraud, and conspiracy to commit fraud under 18 U.S.C. § 1005, and Count Nine asserts mail fraud under 18 U.S.C. § 1341.

---

[4] "The doctrine [of res judicata] has two primary applications, commonly referred to as claim preclusion (or true res judicata) and issue preclusion (or collateral estoppel) . . .  The modern trend seems to favor the use of the term res judicata to mean only the doctrine of claim preclusion, while referring to issue preclusion by that name or as collateral estoppel." 18 Moore's Federal Practice - Civil § 131.10 at 1, 3 (2024).

Counts Two, Four, Five, Seven through Ten, and Thirteen were fully litigated and addressed in Connecticut Superior Court, and Count Six stems from those claims. *See* State Foreclosure Action. As a result, each of the above-mentioned elements for finding claim preclusion are met here. *See Corbett*, 124 F.3d at 87–88 ("To determine whether the doctrine of res judicata bars a subsequent action, we consider whether 1) the prior decision was a final judgment on the merits, 2) the litigants were the same parties, 3) the prior court was of competent jurisdiction, and 4) the causes of action were the same."). The Connecticut Superior Court's prior ruling, a final judgment on the merits in a court of competent jurisdiction,[5] involved the same parties, Mr. Clark and Santander.

While here Mr. Clark also brings claims against Santander employees, these individual defendants are in privity with Santander as current or former employees of the bank. *See Summitwood Dev., LLC v. Roberts*, 25 A.3d 721, 726–27 (Conn. App. 2011) ("[W]e find no error in the court's determination that the individual defendants, as agents or representatives of PDC–El Paso, were in privity with PDC–El Paso, a defendant in the *Nipmuc I* action."); *id.* (quoting 50 C.J.S. 480, Judgments § 1109 (2009) for the proposition that "[w]here a plaintiff in an action against an employee is defeated on the merits, the judgment is generally regarded as a bar to a subsequent action against the employer, and vice versa" (alteration in original)). Finally, Mr. Clark's claims in these Counts are nearly identical to the "30 special defenses and 2 counterclaims" raised by Mr. Clark in the earlier foreclosure action against Santander Bank, where the Superior Court found that Mr. Clark had not met his burden in proving any of his

---

[5] "Every court in rendering a judgment tacitly, if not expressly, determines its jurisdiction over the parties and the subject matter." *See Corbett*, 124 F.3d at 88 (quoting *Stoll v. Gottlieb*, 305 U.S. 165, 171–72 (1938)).

special defenses or counterclaims.[6] State Foreclosure Action at 2, 10–15; *id.* at 10 (listing Mr. Clark's affirmative defenses, which include "2. admitted/invalid/defective/unenforceable alleged mortgage; 3. defendant is valid, secured and enforceable first lien position; . . . 6. Negligence; . . . 12. financial fraud; 13. mortgage fraud; 14. mail fraud;. . . 26. illegality; . . . 29. violation of the fair debt collection practices act; 30. violation of the Connecticut Unfair Trade Practices Act.").

Additionally, as Count Six stems from the other Counts listed in this section which were fully and finally ruled on by the Connecticut Superior Court, res judicata bars Mr. Clark from bringing it as well. *See Chien v. Skystar Bio Pharm. Co.*, 623 F. Supp. 2d 255, 260 (D. Conn. 2009) ("[*R*]*es judicata*, or claim preclusion, 'bars not only those claims or legal theories that were asserted in the prior action, but also those… that could have been asserted, regardless whether they were in fact raised by the parties, so long as they arise from the same transaction.'" (quoting *Patrowicz*, 359 F. Supp. 2d at 153)).

Accordingly, the Bankruptcy Court properly dismissed Counts Two, Four through Ten, and Thirteen. *See Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000) ("[*R*]*es judicata*, or claim preclusion, holds that 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980))).

---

[6] Mr. Clark asserted counterclaims for "Quiet Title" and "Violations of the Connecticut Unfair Trade Practices Act," State Foreclosure Action at 15, and raised the following special defenses during the State Foreclosure Action: "1. failure to join indispensable party; 2. admitted/invalid/defective/unenforceable alleged mortgage; 3. defendant is valid, secured and enforceable first lien position; 4 .. accord and satisfaction; 5. consent; 6. negligence; 7. contributory negligence; 8. promissory estoppel; . 9. equitable estoppel; 10.laches; 11. failure to state a claim upon which relief can be granted; 12. financial fraud; 13. mortgage fraud; 14. mail fraud; 15. lack of standing; 16. lack of subject matter jurisdiction; 17. payment; 18. multiple breaches of contract; 19. multiple breaches of novated (oral) contract; 20. release; 21. discharge; 22.waiver; 23. sham complaint; 24. statute of frauds; 25. statute of limitations; 26. illegality; 27. abandonment of alleged security; 28. unclean hands; 29. violation of the fair debt collection practices act; 30. violation of the Connecticut Unfair Trade Practices Act." *Id.* at 10–11.

####    4.    Failure to State a Claim

The Bankruptcy Court likewise properly dismissed Mr. Clark's remaining claims for injunctive relief under 15 U.S.C. § 1116 in Count One, dischargeability of debt under 11 U.S.C. § 727 in Count Three, and conspiracy to interfere with civil rights under 42 U.S.C. § 1985 in Count Twelve for failure to state a claim upon which relief can be granted.

####    i.    Count One

Under 15 U.S.C. § 1116, "[t]he several courts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions . . . to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark office or to prevent a violation under [the Lanham Act]." 15 U.S.C. § 1116(a). This statute is thus part of the Lanham Act, which is concerned with federal trademarks and does not address bankruptcy or foreclosures. Because the Lanham Act is not applicable in the current matter, the Bankruptcy Court properly dismissed Count One.

Moreover, even construing Count One as requesting any injunctive relief, rather than relief specifically under 15 U.S.C. § 1116, this Count must still be dismissed because "injunctive relief is generally appropriate only when there is an inadequate remedy at law and irreparable harm will result if the relief is not granted." *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 103 (2d Cir. 2005). Count One of Mr. Clark's Complaint specifically requests alternative relief, "money damages." Compl. at 23, ¶ 25 ("As a direct and proximate cause by the named Defendants in Count One (1), the Plaintiff suffered money damages in excess of $75,000." (emphasis removed)); *id.* at 23 ("WHEREFORE, the Plaintiff moves this Court for judgment of money damages against all named Defendants for Count One (1), together with such other and further relief as this Court may deem reasonable and just under the circumstances."); *see also*

*Nechis*, 421 F.3d at 103 ("Here, Nechis cannot satisfy the conditions required for injunctive relief; any harm to her can be compensated by money damages[.]").[7]

### ii. Count Three

Under 11 U.S.C. § 727, "[t]he court shall grant the debtor a discharge, unless" an exception contained in the statute is met. As the Bankruptcy Court noted, the discharge of debt mentioned in 11 U.S.C. § 727 is "self-executing," Order re Mot. to Dismiss at 15, meaning courts ordinarily grant a discharge of debt at the conclusion of a bankruptcy proceeding. Section 727, however, allows for an interested party—typically, a creditor—to raise an exception to have the debtor be denied the discharge they ordinarily would receive. *See In re Cacioli*, 463 F.3d 229, 234 (2d Cir. 2006) ("One of the central purposes of the Bankruptcy Code and the privilege

---

[7] In addition, to the extent Mr. Clark intended to request an injunction staying state court foreclosure proceedings, as the Court has stated previously in denying Mr. Clark's requests for a stay pending his appeal of his state foreclosure proceeding:

> The federal Anti-Injunction Act provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. "The three excepted circumstances are (i) the express provisions of another act of Congress authorizing such an order; (ii) necessity in aid of the federal court's jurisdiction and (iii) the need to protect or effectuate the federal court's judgments." *Standard Microsystems Corp. v. Texas Instruments Inc.*, 916 F.2d 58, 60 (2d Cir. 1990) (citing *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 287-88 (1970)). These exceptions are narrowly construed. *See Vendo Co. v. LektroVend Corp.*, 433 U.S. 623, 630 (1977) ("any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy" (citing *Atl. Coast Line*, 398 U.S. at 297)).

> "[T]he Second Circuit has expressly applied the Anti-Injunction Act to state foreclosure proceedings." *Ishutkina v. CitiMortgage, Inc.*, No. 3:19-CV-373(JCH), 2019 WL 13240429, at *1 (D. Conn. May 6, 2019), *aff'd*, 790 F. App'x 327 (2d Cir. 2020) (citing *Ungar v. Mandell*, 471 F.2d 1163, 1165 (2d Cir.1972) (holding that the AntiInjunction Act prohibits injunction of state court foreclosure proceeding)). "Unless one of the enumerated exceptions applies, the court may not enjoin the state court foreclosure action." *Rhodes v. Advanced Prop. Mgmt. Inc.*, No. 3:10-CV-826 JCH, 2011 WL 3204597, at *1 (D. Conn. July 26, 2011) (citing *Ungar*, 471 F.2d at 1165).

> Here, the injunction sought by Mr. Clark of state court foreclosure proceedings is barred by the Anti-Injunction Act, as it does not fall within the three exceptions to the Anti-Injunction Act.

Order, ECF No. 28 (Sept. 10, 2024).

of discharge is to allow the 'honest but unfortunate debtor' to begin a new life free from debt. In the interest of protecting creditors, however, § 727 requires the denial of discharge under ten enumerated circumstances."). The statute does not grant debtors, such as Mr. Clark, a private cause of action to discharge their own debt.

Moreover, discharge holds little relevance in this situation, as it would not cause the mortgage underlying the current issue to be unenforceable. *See Drew v. Chase Manhattan Bank*, 185 B.R. 139, 142 (Bankr. S.D.N.Y. 1995) ("While a mortgage note represents a personal obligation of the mortgagor, the mortgage is merely security for such obligation. And, while the personal obligation is discharged in bankruptcy, a valid mortgage lien survives the bankruptcy." (internal citations omitted)).

Accordingly, the Bankruptcy Court properly dismissed Count Three.

### iii. Count Twelve

To bring a claim under 42 U.S.C. § 1985, a plaintiff must establish:

> (1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States.

*Favourite v. 55 Halley St., Inc.*, 381 F. Supp. 3d 266, 283 (S.D.N.Y. 2019) (citing *Traggis v. St. Barbara's Greek Orthodox Church*, 851 F.2d 584, 586–87 (2d Cir.1988)). Additionally, the conspiracy must be motivated by "some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Id.* (quoting *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993)).

Here, Plaintiff has not alleged any invidious discriminatory intent based on his race or class, nor has he provided any facts sufficient to conclude that the Defendants conspired to deprive him of equal protection or equal privileges and immunities under the laws.

Accordingly, the Bankruptcy Court properly dismissed Count Twelve.

### 5.  Denial of Leave to Amend

Under Federal Rule of Civil Procedure 15(a),

> [a] party may amend its pleading once as a matter of course no later than: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* Courts have broad discretion to decide a motion to amend. *See Local 802, Assoc. Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998).

Reasons for denying leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment[.]" *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (noting that leave to amend may be denied when amendment is "unlikely to be productive," such as when an amendment is "futile" and "could not withstand a motion to dismiss [under] Fed. R. Civ. P. 12(b)(6)"). "[A] motion for leave to amend a complaint may be denied when amendment would be futile." *Tocker v. Phillip Morris Cos., Inc.*, 470 F.3d 481, 491 (2d Cir. 2006) (citing *Ellis v. Chao*, 336 F.3d 114, 127 (2d

Cir. 2003)); *see also Kim v. Kimm*, 884 F.3d 98, 105–06 ("Therefore, because the proposed

amendments would have no impact on the basis for the district court's dismissal and would

consequently be futile, the district court did not abuse its discretion in denying [the plaintiff]

leave to amend." (citing *Ellis*, 336 F.3d at 127)).

"Denial of leave to amend is typically reviewed for abuse of discretion, [h]owever, 'if the

denial of leave to amend is based upon a legal interpretation [it is reviewed] de novo." *AEP*

*Energy Servs. Gas Holding Co. v. Bank of Am.*, N.A., 626 F.3d 699, 725 (2d Cir. 2010)

Here, any amendment for all but one of Mr. Clark's claims would be futile. Counts Four,

Seven, Eight, Nine, and Eleven arise from criminal statutes that do not provide a private cause of

action, and thus leave to amend such claims would be futile. *See Sheehy*, 335 F. App'x at 104

("To the extent that Appellants assert claims based on the violation of federal criminal statutes

… these claims are not cognizable, as federal criminal statutes do not provide private causes of

action.").

Similarly, any amendment of Counts Two, Four through Ten, and Thirteen would be

futile because these claims were previously litigated and are barred by the doctrine of *res*

*judicata*. *See Monahan*, 214 F.3d at 284 ("[R]es judicata, or claim preclusion, holds that 'a final

judgment on the merits of an action precludes the parties or their privies from relitigating issues

that were or could have been raised in that action.'" (quotation omitted)).

Likewise, amendment of Count One would be futile because Count One arises out of the

Lanham Act, which is inapplicable to Bankruptcy Proceedings, and other injunctive relief is

inappropriate because Mr. Clark has requested money damages. *Nechis*, 421 F.3d at 103

("[I]njunctive relief is generally appropriate only when there is an inadequate remedy at law and

irreparable harm will result if the relief is not granted."). Finally, as a debtor bringing an

adversary action, Mr. Clark may not bring a claim under 11 U.S.C. § 727, and amendment of

Count Three would thus be futile. *See In re Cacioli*, 463 F.3d at 234 ("In the interest of

protecting creditors, . . ., § 727 requires the denial of discharge under ten enumerated

circumstances."). As a result, the Bankruptcy Court properly denied leave to amend these claims.

*Tocker*, 470 F.3d at 491 ("[A] motion for leave to amend a complaint may be denied when

amendment would be futile.").

      While "a *pro se* litigant in particular should be afforded every reasonable opportunity to

demonstrate that he has a valid claim," *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000) (citation

and internal quotation marks omitted), the Bankruptcy Court properly considered Mr. Clark's

lengthy history of bringing frivolous claims in denying leave to amend. *See* Order re Mot. to

Dismiss at 18 ("As noted above, the counts alleged in the Complaint largely mirror those listed

among the Debtor's affirmative defenses and counterclaims in the Foreclosure Action. Almost

all of them were lifted directly from his complaint in the First District Court Action. The

Debtor's pattern has thus been to attempt to relitigate his claims in another lawsuit in other

forums when it is apparent that they will not pass muster in their current setting. The Court thus

finds that any attempt to amend the Complaint would be futile and only fuel further dilatory,

repetitive, and wasteful litigation." (citing *Clark v. Santander Bank, N.A.*, No. 22-cv-00039-

SVN, ECF No. 72 (D. Conn. Apr. 5, 2022)).

      Accordingly, the Bankruptcy Court properly denied leave to amend. *In re Ferati*, 622

B.R. 1, 5 (Bankr. D. Conn. 2020) ("When there is a showing of 'undue delay, bad faith or

dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments

previously allowed, undue prejudice to the opposing party by virtue of allowance of the

amendment, [or] futility of amendment,' leave to amend should be denied." (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)) (alteration in original)).

The Bankruptcy Court did not err in dismissing Mr. Clark's adversary complaint, and the Bankruptcy Court's Order will be affirmed.

### B. Certification of Direct Appeal to the Second Circuit

Under 28 U.S.C. § 158(d)(2)(A), the Second Circuit "shall have jurisdiction of appeals" from a bankruptcy court if the bankruptcy court certifies that

> (i) the judgment, order, or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance;
>
> (ii) the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; or
>
> (iii) an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken;.
>
> and if the court of appeals authorizes the direct appeal of the judgment, order, or decree.

28 U.S.C. § 158(d)(2)(A)

The Second Circuit "may in its discretion exercise, or decline to exercise, [its] jurisdiction" to accept a direct appeal. *Weber v. United States, 484 F.3d 154, 157 (2d Cir. 2007)* (citing 28 U.S.C. § 158(d)(2)(A) ("and if the court of appeals authorizes the direct appeal of the judgment, order, or decree")).

Mr. Clark asserts that each of the three elements listed above are present in the current matter. He has provided no facts or law to display that any of the three have been met, however, and it appears to the Court that none are. The decision this appeal stems from does not involve a question or law where no controlling decision exists, nor does it involve a matter of public

importance. *Sabine Oil & Gas Corp. v. HPIP Gonzales Holdings, LLC* (*In re Sabine Oil & Gas Corp.*), 551 B.R. 132, 140 (Bankr. S.D.N.Y. 2016) ("Courts have held that public importance exists when the matter on appeal 'transcend[s] the litigants and involves a legal question the resolution of which will advance the cause of jurisprudence to a degree that is usually not the case.' 'An appeal that impacts only the parties, and not the public at large, is not a matter of public importance.'" (quoting *Mark IV Indus., Inc. v. N.M. Env't Dep't*, 452 B.R. 385, 388 (Bankr. S.D.N.Y. 2011))).

In addition, the decision does not involve a question of law requiring the resolution of conflicting decisions, and an immediate appeal of the decision to advance the progress of the case is also inappropriate here where the Bankruptcy Court has issued a final judgment. *See In re Johns-Manville Corp.*, 449 B.R. 31, 34 (Bankr. S.D.N.Y. 2011) ("This is not the case of an interlocutory appeal where a prompt ruling by the Court of Appeals will advance the ongoing litigation in the Bankruptcy Court. Rather, the only argument for expedition is that the appeal will be quicker because it need only be heard by one court—the Court of Appeals. That argument can be made in every case where there is an appeal involving a final judgment of the Bankruptcy Court." (citing *Weber*, 484 F.3d at 160 (2d Cir. 2007) ("Congress was aware of the dangers of leapfrogging the district court in the appeals process."))).

Accordingly, because none of the 28 U.S.C. § 158(d)(2)(A) factors for a direct appeal to the Second Circuit have been met, the Bankruptcy Court properly denied Mr. Clark's request to certify a direct appeal.

### C.  The Motion for Recusal

Parties may move for judicial recusal on account of "a personal bias or prejudice either against [the party] or in favor of any adverse party." 28 U.S.C. § 144. Such a motion "shall be

filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time." *Id*. Section 455 further governs the disqualification of federal judges, providing a non-exhaustive list of reasons for disqualification, including: having "a personal bias or prejudice concerning a party," serving as a lawyer in the matter while in private practice, and "financial interest in the subject matter in controversy or in a party to the proceeding." 28 U.S.C. § 455.

The Second Circuit has recognized that "[d]iscretion is confided in the [presiding] judge in the first instance to determine whether" disqualification is appropriate, as "[t]he judge presiding over a case is in the best position to appreciate the implications of those matters alleged in a recusal motion." *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1312 (2d Cir. 1988) (citing *Apple v. Jewish Hosp. & Med. Ctr.*, 829 F.2d 326, 333 (2d Cir. 1987)). "In deciding whether to recuse himself, the trial judge must carefully weigh the policy of promoting public confidence in the judiciary against the possibility that those questioning his impartiality might be seeking to avoid the adverse consequences of his presiding over their case." *Id*. (citation omitted). Judges must be "free to make rulings on the merits without apprehension" that they may have created the appearance of bias. *McCann v. Commc'ns Design Corp.*, 775 F. Supp. 1506, 1522 (D. Conn. 1991) Indeed, judges are "as much obliged not to recuse [them]self when it is not called for as [they are] obliged to when it is." *In re Drexel Burnham Lambert Inc.*, 861 F.2d at 1312.

Judges are generally presumed to be impartial and "there is a substantial burden on the moving party to show that the judge is not impartial." *McCann*, 775 F. Supp. at 1522. "Recusal motions should not be used as 'strategic devices to judge shop.'" *Id.* (quoting *Lamborn v. Dittmer*, 726 F. Supp. 510, 515 (S.D.N.Y. 1989)). "Litigants are entitled to an unbiased judge;

not to a judge of their choosing." *In re Drexel Burnham Lambert Inc.*, 861 F.2d at 1312. "An application for the disqualification of a judge must rest on a factual basis and not on the whim of a litigant who asserts vague contentions." *Hunt v. Mobil Oil Corp.*, 557 F. Supp. 368, 376 (S.D.N.Y. 1983), *aff'd*, 742 F.2d 1438 (2d Cir. 1983). Moreover, "[t]he alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966). Extrajudicial conduct means "conduct arising from something outside of rulings or statements made by the trial judge in the course of his judicial duties." *McCann.*, 775 F. Supp. at 1527.

"Recusal motions are committed to the sound discretion of the [lower] court, and [reviewing courts] will reverse a decision denying such a motion only for abuse of discretion." *LoCascio v. United States*, 473 F.3d 493, 495 (2d Cir. 2007); *see also In re Ad Hoc Comm. of Tort Victims*, 327 B.R. 138, 141 (Bankr. S.D.N.Y. 2005) ("[T]he Court sees no reason why the standard of review applied by the Second Circuit to mandamus actions seeking recusal of a district judge would not also be applicable to a district court's review of a bankruptcy judge's refusal to recuse herself.").

Mr. Clark advances six reasons for recusal all allegedly arising out of statements made during the Bankruptcy Court's December 21, 2023 hearing: (1) the Bankruptcy Court Judge claimed to have absolute immunity; (2) the Bankruptcy Court Judge did not admonish opposing counsel for making inflammatory statements about Mr. Clark; (3) the Bankruptcy Court Judge offered Mr. Clark unsolicited and unlawful legal advice and told him "You don't want to go down that road," in reference to a defamation suit against opposing counsel; (4) the Bankruptcy Court Judge showed unfavorable bias towards Mr. Clark and favored the opposing counsel when

he inaccurately summarized opposing counsel's position; (5) the Bankruptcy Court Judge interrupted Mr. Clark and denied him time and opportunity to fully express his closing statement; and (6) the Bankruptcy Court Judge offered prejudicial, biased, unsolicited, and unlawful legal advice to Mr. Clark. Mot. for Recusal at 5–8.

To address Mr. Clark's claims in order: Mr. Clark first claims that the Bankruptcy Court falsely claimed to have absolute immunity. The Bankruptcy Court's comment about immunity, however, simply mentioned the doctrine of judicial immunity in response to the notion that Mr. Clark would one day sue the court. *See* Order re Recusal at 3 ("The Court made this comment in response to Attorney Higgins's statement that the Debtor might sue the Court at some point. Despite the Debtor's disagreement, he is well aware that judicial officers have immunity with regards to acts that are judicial in nature."). This remark, which merely states the concept of judicial immunity, is clearly not grounds to disqualify a judge. *Cf. Liteky v. United States*, 510 U.S. 540, 555 (1994) ("[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.").

Second, Mr. Clark claims that the Bankruptcy Court did not admonish the opposing counsel for making inflammatory remarks about Mr. Clark. In response, the Bankruptcy Court stated that "[t]he Court is able to distinguish between facts and argument—regardless of how hyperbolic such argument may become. . . . [S]uch remarks, although they may have been piercing, were not in the opinion of the Court sanctionable." Order re Recusal at 3. Failure to admonish opposing counsel for making such remarks is not grounds for recusal. *Cf. Person v. Gen. Motors Corp.*, 730 F. Supp. 516, 519 (W.D.N.Y. 1990) ("[E]ven assuming *arguendo* that in the past I have treated counsel brusquely in court, that is insufficient to compel recusal.")

26

Third, Mr. Clark claims that the Bankruptcy Court gave him unsolicited legal advice and told him not to "go down that road" when Mr. Clark indicated his intent to bring a defamation claim against the opposing counsel for statements made during litigation. The Bankruptcy Court indicated "that Attorney Higgins's argument could not be defamatory because they were made in the context of litigation" and "for the [Bankruptcy] Court to point out [the] settled proposition [of litigation privilege] and to voice its skepticism over disagreement with it is hardly legal advice or inappropriate." Order re Recusal at 3–4. The Court agrees. The Court's intent was to inform Mr. Clark about the concept of litigation privilege so he would understand that remarks made in the litigation context are not defamatory. *See Costello v. Wells Fargo Bank Nat'l Ass'n*, No. 16-CV-1706 (VAB), 2017 WL 3262157, at *14 (D. Conn. July 31, 2017) ("The Connecticut Supreme Court has established a rule of 'absolute immunity,' also 'referred to as the litigation privilege,' that protects the statements or actions that any individual makes, in the context of a judicial proceeding, from giving rise to most types of tort claims. (quoting *MacDermid, Inc. v. Leonetti*, 79 A.3d 60 (Conn. 2013))), *aff'd*, 739 F. App'x 77 (2d Cir. 2018) (summary order). This is not grounds for recusal, as no reasonable person, knowing all relevant facts, would conclude that the Court's impartiality could be questioned because of this interaction. *See Apple*, 829 F.2d at 333 ("[T]he substantive standard for recusal is whether a reasonable person, knowing all the facts, would conclude that the court's impartiality might reasonably be questioned.").

Fourth, Mr. Clark claims that the Bankruptcy Court inaccurately summarized the arguments of his opposition. This allegedly inaccurate summary of the opposition's argument is not grounds for a recusal. As the Bankruptcy Court noted, if Mr. Clark believes that an improper summary of his opponent's argument impacted the result of his case, the proper recourse for him would be to appeal the Bankruptcy Court's judgment, not request recusal of the judge. Order re

Recusal at 4; *see In re Emergency Beacon Corp.*, 790 F.2d 285, 288 (2d Cir. 1986) ("A key purpose of appellate review is to give a litigant recourse to another judicial authority in the event of error or bias by the trial judge.").

Fifth, Mr. Clark states that the Bankruptcy Court prevented him from making certain arguments. The Bankruptcy Court alleges that those arguments were about "matters not on the hearing docket and therefore not properly before the court" and that the Bankruptcy Court had previously considered and denied. Order re Recusal at 4, 4 n.3. By attempting to make those arguments, Mr. Clark seems to have been attempting to relitigate matters that were previously decided by the Court. This is not grounds for recusal. *See Dietz v. Bouldin*., 579 U.S. 40, 47 (2016) ("[C]ourts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases.").

Finally, Mr. Clark alleges that the Bankruptcy Court gave his opposition unsolicited legal advice when it asked if they would be seeking alternative forms of relief or if they planned to supplement their moving papers consistent with the record in the case. Once again, this interaction would not cause a reasonable person to doubt the Court's partiality and does not meet the threshold to establish grounds for recusal. *See Apple*, 829 F.2d at 333 ("[T]he substantive standard for recusal is whether a reasonable person, knowing all the facts, would conclude that the court's impartiality might reasonably be questioned.").

In asserting each of his theories, Mr. Clark has failed to meet the substantial burden placed on moving parties to show that the presiding judge is not impartial. Each of Mr. Clark's complaints arise out of court rulings and remarks on evidence in the record. None of Mr. Clark's grievances arise out of any extrajudicial conduct, and each results from rulings or statements made during litigation. *See Locascio v. United States*, 372 F. Supp. 2d 304, 315 (E.D.N.Y. 2005)

("[R]ulings alone almost never constitute a valid basis for a bias or partiality motion …. [T]he alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on … some basis other than what the judge learned from his participation in the case." (citing *Grinnell Corp.*, 384 U.S. at 583) (internal quotations omitted)). Mr. Clark has not identified an issue stemmed from favoritism or bias. Thus, Mr. Clark has not established that the Bankruptcy Court acted impartially or extrajudicially such that recusal is justified.

Accordingly, the Bankruptcy Court properly denied the motion to recuse. *See McCann.*, 775 F. Supp. at 1522 ("It is vital to the integrity of the system of justice that a judge not recuse himself on unsupported, irrational or highly tenuous speculation.").

## IV.    CONCLUSION

For the foregoing reasons, the Bankruptcy Court's dismissal of Mr. Clark's adversary proceeding, and denial of his request leave for certification and his motion for recusal are **AFFIRMED**, and this appeal is dismissed.

The Clerk of Court is respectfully directed to close this case.

**SO ORDERED** at New Haven, Connecticut, this 20th day of December, 2024.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE